Employment Opportunity Commission. Ms. Marcus. Thank you, Your Honor. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent the Federal Appellants Cross Appellees. In this case, Texas is seeking pre-enforcement review of EEOC guidance on the use of criminal history in employment decisions under Title VII. The District Court should have rejected this attempt because Texas lacks standing and the guidance is not final agency action. Texas lacks standing here because the guidance doesn't force it or any employer to take any action or refrain from any action. It is merely the EEOC expressing its views of the law, and Texas here, even after summary judgment and the opportunity through discovery to present evidence of an injury, did not do so. You agree, though, that Texas is an object of the guidance because the guidance specifically mentions governmental entities? Well, Texas is an employer under Title VII, and as such, the EEOC does investigate it. Well, but there is specific mention of public and private employers. Yes. Yes, Your Honor, but the cases that discuss parties having standing that are the object of a regulation, those involve substantive rules and final agency action that have legal consequences. Here, the guidance does not have any such consequences because the EEOC, unlike the federal agencies in those cases, don't treat such guidance, including this Court and the Supreme Court have made clear numerous times that EEOC guidance does not have the force of law. Isn't that kind of circular, though? Because one of the questions is, did they improperly enact a substantive rule? That is one of the questions, Your Honor, but it is clear under the law that the EEOC did not do so because nothing in the guidance purports to be a rule. Again, there is nothing in there that Texas can point to. I guess maybe using an example of one of the primary cases that Texas relies on would be helpful. In Appalachian Power in the D.C. Circuit, that involved the Environmental Protection Agency, which did have authority from Congress to promulgate rules under the Clean Air Act. That involved permitting requirements, and there you can see that the regulation itself affected objects of the regulation. Here, the EEOC does not even enforce Title VII against Texas. But finality cannot depend upon who is the plaintiff, can it, Counsel? Our argument does not rely on who is the plaintiff for finality. That is true, and it is not final as to any employer. Here, the fact that the Department of Justice enforces Title VII against state and local governments is even more relevant with respect to standing, which is our primary. The District Court should be reversed on both standing and final agency action, but the standing issue here we raised at the beginning of the brief because this case was at the summary judgment stage now. It was not the last time it came up. The panel majority opinion the last time this appeal was before the Court was vacated, so it's not authority in any event. Counsel, is it your position that the guidance is not final agency authority as to private employers? Yes. It's not final even as to private employers? Yes, because it does not have legal consequences, and that is because... But doesn't it bind the employees of the EEOC? Only in the sense that they, just like with any EEOC compliance manual, any kind of internal guidance that the EEOC has, they, of course, are expected to follow their agency's guidance on how to conduct an investigation. The difference, though, is that the underlying requirements here come from Title VII, not from the guidance, and that if... If we disagree with you that Title VII says anything of the sort, how does that affect your argument? That Title VII does not say that the EEOC lacks authority to promulgate substantive rules? No. That... The title... This is not... It's not Title VII that's saying it is. It's the guidance that's saying this. Oh, the guidance... But Title VII is... Excuse me, Your Honor. Even if, as we noted in our brief, the Department of Justice disagrees with the EEOC's approach in a number of respects, and that's another aspect that shows the lack of standing here for Texas, a court, of course, could disagree with what the EEOC says in the guidance. It is... Certainly, it can be cited. It's entitled to just skid more deference, which is only, you know, the power to persuade. But they're... Unlike other agency regulations, which themselves, on their own, can impose a legal requirement on a regulated party, like someone... If there's a permitting requirement that's based on emissions and someone exceeds... A company exceeds the emissions standard, that company can't get a permit. That's an effect from the regulation. And in those cases, if an... So, to answer your initial question, Your Honor, the guidance is binding on employees in the sense that they need to follow it. It's not binding on the agency, though, in the sense that the EEOC could change its views whenever it wants. I mean, this is guidance that it is... The EEOC is in a very different position with respect to Title VII than a lot... Than the federal agencies who were the defendants in the authority relied on by Texas. And that's because the EEOC, even... It has authority to investigate and conduct administrative proceedings. But even if it... In the private sector context, even if it brings a suit, that is reviewed de novo by the court. The EEOC doesn't get any kind of special deference. And if the EEOC issues a decision, it's not... It's very different. You don't have the normal kind of administrative review. It's not a regulatory agency in the same sense as the EPA is, for example, with respect to, like, the Clean Water Act or something, or the statutes that issue that Texas cites. But the other issue here is that the district court did not even address the standing arguments after summary judgment. After discovery, the government... The federal government presented evidence that Texas had not shown a single enforcement action against it by the EEOC to any kind of impending harm. It hadn't... Despite its allegations and its complaint, it couldn't provide evidence of a single state agency that had changed its policies or practices. But it cost the state to review and spend money and time looking at the policy. Isn't that... Texas... Wouldn't that give standing? Not in this case, Your Honor, because Texas cited only one instance of that, which was its Department of Public Safety, and that was in the past. It did not submit any affidavit saying that it planned to do any further analysis in the future. And in addition, self-inflicted injuries under Clapper and under this court's authority in Barber and Glass v. Paxton do not provide standing. And here... How can that be self-inflicted if... Isn't it prudent if the EEOC issues some guidance that any employer determine whether they are in compliance with the guidance and are subject to investigation and conciliatory action and all of the powers that the EEOC has? Well, Your Honor, I think it'd be prudent for any employer to consistently review compliance with Title VII, which has been applicable to Texas before the guidance and after it, as the EEOC... And so that... And that may be prudent for employers then to have review of their policies generally to see if they comply with Title VII. But it's the guidance that has triggered this review, not just general Title VII in the air. Your Honor, I... The guidance itself, though, doesn't change the legal landscape for Texas at all. And the enforcement is still done by Department of Justice. Texas has not shown that the department agrees with the guidance, has any plans to enforce it. Can you talk about that a little bit? The... I don't... I'm not sure that it matters whether or not that it's going to be enforced or not. But talk about the AG, the AG's viewpoints, vis-a-vis there was a joint MOU that said that they were going to be in sync, and then they say now they're not in sync. And at what time do we determine the standing? At the time the suit was filed and whether they were in sync then or now when they say they're not going to be in sync? The... At the time of the suit, they... The MOU that Texas relies on was not even in effect. That was a 2015 document, which in any event makes clear on the first... Excuse me, on the first page that under the statute, the Department of Justice is the sole federal entity that has the authority to sue such employers. And even... And Texas doesn't cite anything, any official endorsement of the guidance at the time of the suit either. It now is citing some, you know, a footnote in the guidance about some actions of then Attorney General Eric Holder. But the fact that the department's views change and the EEOC's views change over the course of the guidance itself, that could possibly cause any legal consequences or liability for Texas. Didn't the guidance cause some consequences for other entities that had to invest a lot of money responding to investigations on this point? Your Honor, the only cases that were cited by Texas and some... This was... Were by private employees and... Right, the people mark or something like that? Yeah. Oh, and Your Honor, in that case, the EEOC process was done before the guidance was promulgated. It had nothing to do with the guidance. Right. Have there been any since, based upon the guidance, any investigations of private employers? Well, Your Honor, I think, I mean, the Title VII, the EEOC's job is with private employers and state and local governments. It has investigatory authority. And to the extent that the guidance has been in effect, if there have been cases based on criminal history, presumably the employees would have followed the guidance. But that's, again, that doesn't impose any legal consequences that are because the EEOC, as the guidance makes clear on its face, has long held the view that employers' use of criminal history records may implicate the prohibitions against employment discrimination under Title VII. This just is... It basically is just taking those... The same underlying view has always been in effect. And the EEOC, just in the guidance, has elaborated on this. But it has... But nothing in the guidance, again, requires any employer. And it's just even clearer, the disconnect here with the state. And Your Honor, given that here, I think the AT&T versus EEOC case is very on point here because the D.C. Circuit, there you had an EEOC compliance manual that made clear... Actually, that case, in a lot of respects, was stronger for the employer, a lot stronger than here, because you had a compliance manual that actually said that the policy that AT&T had with respect to pregnancy leave in the EEOC's view violated Title VII. And AT&T... And in fact, the EEOC had already written AT&T letters saying that they thought its policy was not compliant. But the D.C. Circuit said that allowing AT&T to come in and obtain pre-enforcement review before either the EEOC or an individual AT&T employee filed suit would circumvent the administrative process that Congress has provided for in Title VII. And Congress decided to give the EEOC this authority to conduct investigations. And here, without the guidance, the EEOC is still, in its investigation, going to ask its investigators to apply its version of its views of what the law means. And that could be, you know, the EEOC files amicus briefs in the Court of Appeals. This really isn't different legally than an investigator following what the EEOC's view is in a Court of Appeals amicus brief, but that view isn't binding on the courts. It's not binding on an employer. And if this sort of pre-enforcement review were allowed, there would be a tremendous amount more litigation, likely, because now, when an employer disagrees with the EEOC's view, they can test it in court. And that, I mean, there's a Fifth Circuit case that we cited in one of our briefs that disagreed with the EEOC's of whether an employment agency had to have 15 employees. And this court just thought that EEOC's view conflicted with the plain language of Title VII. But that was in a case where the employee sued her employer. It wasn't a pre-enforcement action by the employment agency saying, we want a declaratory judgment. And here, it's even more stark because we did get to summary judgment, and Texas had the opportunity to submit affidavits to show more than speculative harm. What do you do with the fact that the district court ordered EEOC to go through notice and comment? Because that would be for substantive rulemaking, correct? Your Honor, as we noted in the brief, first of all, if you agree with us on standing or final agency action, you don't need to reach that. The injunction should be vacated in its entirety. If, however, you get to the remedy, we have acknowledged that if this court determines that Texas has standing and the guidance is final agency action and affirms the judgment that it's a substantive rule, then that part of the injunction doesn't, it could be eliminated because the EEOC does not have authority to promulgate a substantive rule. But that's not to say, Your Honor, that the EEOC can't go through notice and comment. It can, and it should, and that it has. For example, in the Meritor case on the Supreme Court, the sexual harassment guidance, there was public input on that. And so the EEOC can do that. That doesn't mean that that guidance has the force of law, but the EEOC can certainly choose to do that. But that wouldn't, in this case, the district court actually found that it was a substantive rule, and the EEOC doesn't have authority to issue a substantive rule. So if we believe it's a substantive rule, we should strike down the rule? No. Well, the primary, the first issue you should reach is whether Texas has standing. They don't even— Well, since you know that there is standing and it's a final agency action, if we believe it's a substantive rule, should we strike it down? You can, Your Honor. I think, again, we think it does not have any legal effect anyway. But yes, if it is a substantive rule, then it would be invalid. But it is not a substantive rule for many reasons. And not only has Texas not shown any threat of enforcement or certainly impending harm from the guidance, but that we have noted in our brief that current department policy actually prohibits enforcement of internal guidance per se in an enforcement action by the department. So that just reinforces the finding that Texas lacks standing. And even assuming an satisfactory, the fairly traceable and redressability argument. So they have standing when the department policy changes? No, Your Honor, they do not, because it would still—again, the guidance is issued by the EEOC, not by the Department of Justice. And there is nothing that—the Title VII action brought by Department of Justice would be de novo, and the court would interpret Title VII. And— So it doesn't matter what the department's policy is to the standing analysis? It just—we think it makes our case even stronger and shows definitively in this case that Texas lacks standing. But even if the department had a different policy, the guidance would just have—would only be relevant to the extent it could persuade the court that it was a proper interpretation of Title VII. And that's why any injury by Texas or any other employer would not be traceable to the guidance, because that's not what would be—that all of the practical harms that Texas has cited—for example, investigations—that the EEOC, you take away the guidance, and the EEOC still would investigate if a Texas state employee had—files a charge against Texas. So— Your initial time has expired, and you've saved time for rebuttal. Thank you. Okay. Thank you. Mr. LaFond? Thank you, Your Honor. You may please the court. Jason LaFond for the state of Texas. The EEOC's self-styled enforcement guidance is a final agency action subject to review in federal court, and Texas has standing to seek that review. If I may, I'll start with standing, which assumes the merits of Texas's APA claim. And that last part is very important here, because my colleague here started off by saying that objects of regulations have standing if those regulations are substantive rules. Well, the standing analysis assumes the merits of Texas's APA claim, which is that the EEOC has improperly promulgated a substantive rule. And so the standing analysis should begin and end there. But if you need to go further, the rule injures Texas in at least two ways. First, it increases the regulatory burden on Texas by putting it to the choice of two unpalatable alternatives—change its employment policies that conflict with the guidance's view of the law or expose itself to enforcement actions. This Court in Texas v. U.S., both the 2015 version and back in 2007, another Texas v. U.S. case, said putting the state to the choice is the injury. The second injury is that the guidance directs private employers to ignore state law that may have a disparate impact. And this Court in both Texas v. U.S., the 2015 case, and in many other cases, has said that preemption and the interference with the ability to enforce a legal code is an injury to the state. And telling employers that they risk costly enforcement actions for following facially neutral state law is— But what do we do about the fact that the district court didn't reanalyze standing after summary judgment? Your Honor, Rule 52 says that district courts need not make any factual findings or conclusions of law in ruling on a motion to dismiss or a motion for summary judgment. So that is no error from the district court. So we can't just assume what's in the complaint, though, can we? Look, if you started off with your number one point, don't we need to get to your number two point in order, since we're at that stage of the case? Your Honor, only for the merits. When we're talking about standing, the ordinary rule, as this Court has said, is that the object of a final agency action has standing to challenge that action. The merits of Texas's case are that the rule is a final agency action. So the Court need only assume that to establish standing. But again, it can go further than that. It can say that this puts a regulatory burden on Texas, and it interferes with Texas's ability to enforce its legal code. But if we then—oh, and if there were any doubt on standing, that doubt would be removed by the special solicitude that is owed Texas as a sovereign, asserting a procedural right to vindicate sovereign and quasi-sovereign interests. In Massachusetts v. EPA and Texas v. U.S., the two most prominent cases applying the special solicitude and finding standing, the states were not even the object of the challenged regulations there. Here, the regulation specifically calls out states. That's no accident. The EEOC was targeting states, and so states, in their sovereign interests, have special solicitude to seek review of that guidance. Does it matter if the AG is part of this case at all? Your Honor, it doesn't matter for the claim against EEOC. But what is the claim? If the AG didn't promulgate the guidance, it is not bound by the guidance, and is not currently planning to enforce the guidance, but we have to decide whether the guidance is a substantive—perhaps we have to decide whether the government is—guidance is a substantive legal rule that may or may not be allowed. What does the AG have to do with that, and why is it important that the the—I'll start with that last point. While we are happy to see that DOJ has flipped its position here, what we worry about is the coming flop, because we know that it's going to go back back to what it said before, and this Court can go to early in this case at ROA pages 160 to 162, where the DOJ expressly endorses the EEOC's view— just assuming argument—of not foreshadowing. Then there's nothing—the AG has nothing there that it's—I mean, whether it on its own decided to have the felon consideration could be challenged at that time, couldn't it? That's true, Your Honor. In the kind of instantaneous point where you say EEOC can't do this, then there's no problem. But when this case was brought against both of them, they're both involved and in concert, and it's important to recall when this case was brought. Back in 2014, when this case was brought, there was a target on the back of Texas, and the main perpetrator against the state of Texas was the Civil Rights Division of DOJ. They treated Texas and brought many cases against Texas, treating Texas and Texas officials as if they were backwoods hayseed bigots, and they made a point of suing Texas whenever they could, and that's when this case was brought. And it's no accident that the EEOC guidance is targeted towards states. The EEOC knows that it can't bring actions against the state. It knows that DOJ does that. The EEOC intended states to know that DOJ was on board, and when it cited the inspiration for the rule, it cited A.G. Holder as the inspiration for the rule, and high-level members of DOJ testified in favor of this rule. And then, again, when the case was brought, DOJ defended the merits of this rule. DOJ is the muscle behind this rule when it comes to states, and so it made sense to sue both of them, and standing is determined when the case is first brought. And so even though DOJ is under better leadership now and has a more correct view of the law now, unfortunately, Texas cannot bank on that in the future. And so Texas was correct to bring its claim against DOJ, and so it continues to have standing now. And my colleague pointed out that the MOU did not come into effect until 2015, but it notes that they had a pilot project going back to 2009, while they were developing this guidance, in which they were working in a partnership to coordinate their enforcement against state and local governments. DOJ's fingerprints are all over  the record. The record doesn't contain any lawsuits or anything brought even by private plaintiffs using the guidance, does it? No, no, Your Honor. And no lawsuit would be brought based upon the guidance. It would be brought... Well, using the guidance to say I can get hired. Right, using the theory, no. But, Your Honor, this is a pre-enforcement challenge. Right, I'm just... That's correct, Your Honor. And in a Texas office of public utility counsel, this case said that the federal government cannot defeat standing by holding off on enforcement actions. And what the Supreme Court said in Abbott Labs applies directly to this case. There is no question in the present case that the petitioners have standing as plaintiffs. The regulation is directed at them, and it requires them to make significant changes in their everyday business practices and if they fail to observe the rule, then they are quite clearly exposed to the imposition of strong sanctions. That's this case. You either change your rule or you're exposed to enforcement actions. And that was the standing rule that the Supreme Court set forth in Abbott Labs. Turning to whether or not the rule is a final agency action, there's no question that it's a consummation of agency deliberation here, so the only question is whether or not it has legal consequences. And it does in four ways, at least four ways. The first is that it has practical binding effect on its targets. My colleague here spent a lot of her argument talking about how the guidance does not legally bind anyone and that the view does not matter because it's Title VII that at the end of the day will be looked at and that's what a court will look at. DOJ is trying to relitigate Hawks. They made the exact same argument in Hawks. You can look at their top side brief. They made the exact same argument. They said it's the Clean Water Act that does this. The jurisdictional determination doesn't do anything. Does that affect the addressability though? If they can turn around and do the same exact thing by enforcing Title VII as they read it, does this really redress your concern? It does, Your Honor. As the Supreme Court has explained, when it's a procedural injury, even if the same thing can happen later, if the procedural injury is taken care of, then that in itself is a redressable injury. They could still investigate Texas tomorrow and say that we believe Title VII provides for disparate impact relief on this class of plaintiffs. Certainly, Your Honor. And there they would be staying in their proper sphere. Title VII puts them as a litigant. They are basically a law firm that sues on behalf of people. They have stepped over their line and out of their sphere in publishing. My colleague called this internal guidance. It's directed towards employers. It's not internal. They publish this guidance for a reason. They can't sue everyone. And so they publish this guidance and they say, spin the wheel. Do what we say in this guidance or you're going to face enforcement actions. And that is almost one-to-one the case, the Chamber of Commerce v. Department of Labor case that we cited from the D.C. Circuit. That involved guidance that binded inspectors. So they couldn't bring any suit. And what OSHA was trying to do was they wanted companies to adopt a broad safety regime. But they knew they couldn't do that through an enforcement rule or through a substantive rule. So they told employers, they said, look, if you do this, you'll reduce your chance of being inspected by 90%. And if you don't do it, you're definitely going to get inspected. And the D.C. Circuit said you can't use your leverage that way to create a practical binding effect because that is exactly the same as if you had just told them to do it. And so DOJ, for obvious reasons, they don't like this precedent because agencies now have to actually go through the APA and they can't give out rules when they're not allowed to. And so they keep trying to litigate this issue over and over again. But these points are established in numerous cases. If an agency tells regulated parties this is how we're going to enforce this rule, this binds our employees, then they are telling them if you don't do what we say, you risk an enforcement action. That is a practical binding effect that is no different than a legal effect. Do you agree that, assuming arguendo again, were we to hold that the guidance is substantively and procedurally unlawful and set aside, would we need to reach the DEC action? No. No, Your Honor. We think that if the rule is gone, then the proper action is to direct the court to dismiss the DEC action. Now, that's the DJA action. The APA is a separate DEC and an injunction relief under the APA, but under the DJA, yes. Yes, that's correct. If I could turn to a few other . . . Your Honor, before you do that . . . Sure, Judge. The . . . this is the second time up. Do we have to modify the second district court's ruling to fit your position? Yes, Your Honor. And how? The district court's ruling should not contain the conditions subsequent about notice and comment. The antecedent question, in order for the district court to require notice and comment, it must have concluded that it was a substantive rule. But as my colleague conceded, EEOC cannot issue substantive rules. And so the rule itself, without any condition, should be enjoined and declared unlawful. That brings up a point that my colleague made that, well, we can't . . . that EEOC can't issue a substantive rule, so this must not be a substantive rule, or it can't have legal consequences. Your Honor, people break rules all the time. If I find my child up past his curfew and he responds, well, I can't be here because I'm not allowed to be here, that's not a proper response. The people . . . agencies go as far as they can all the time, and that's kind of the point. They need to be reined back in, and that's what needs to be done here. Do we also need, though, because you're taking an implied . . . you're saying the district court must have determined that it was substantive, which is why it ordered notice and comment, do we need to actually explicitly say that it's substantive? Your Honor, I'm sorry. I do believe the district court said it was substantive. And so you . . . So it should have just stopped there and just said it's unlawful. Stopped there. But yes, this court should say that it's substantive. But it didn't say, and therefore it is unlawful. Right. Well, it said it needs to go through notice and comment. Right. Right. Right. So you need the, and therefore it is unlawful. And just stop. Right. You have to stop it before notice and comment, but you also need the extra sentence, and therefore it is unlawful. That's correct, Your Honor. If EEOC were to go through notice and comment and come out with the same thing, it would still be unlawful. Well, the other point that my colleague made, we've explained already how this is directed towards employers and that it's not an internal guidance as described by my colleague. There's further evidence of that at the record at ROA 878 to 879, which is a letter from an EEOC investigator to a private employer saying, you have mischaracterized this guidance as ineffectual. It is hoped that you will not mislead your client into believing that it would be a good policy to not involve the public in this. But if you look at Title IX and the guidance and how all the universities changed, and then there was an issue of whether that was really binding at all. Your Honor, I have not examined the Title IX guidance closely to the extent it threatened enforcement actions based on the agency's view and bound its employees to that view, then yes, that is a substantive rule. And it's been rescinded. Well, right. The DOE, laudably, is going through notice and comment. They are doing what they're supposed to do. EEOC doesn't have that option. They are only supposed to be a litigant, but they are trying to do more here. That letter was to a private employer, though, and the enforcement authority is different for a private employer. That's correct, Your Honor. The point of the letter more was to demonstrate how EEOC feels about this guidance. It is not simply internal. It says it is not wise policy for you, a private employer outside the EEOC, to ignore this. But as I explained at the beginning, there is a good reason that DOJ is in this case. But to the extent Your Honor's question goes to causation, the Supreme Court in Bennett said that there is no need for a plaintiff to target the very last step in the causation. And if this guidance is removed or if somehow it's allowed and it changes substantively after notice and comment, the EEOC could go back to its previous views. My colleague said that nothing has changed in this rule. She's mistaken. The EEOC, back in 1987, expressly said you don't have to do individualized assessments. We know that in some prior things we've said that. You don't have to do that. You only have to screen. And then later on in its manual, excuse me, Your Honor, it said that generally employees will be able to justify their decision to not hire a felon when the conduct that was the basis of the conviction is related to the position. They have changed. And the EEOC had never said before, or at least not that we found, that a mutually neutral state law would be subject to enforcement by the EEOC. And indeed, DOJ said exactly the opposite to the Supreme Court in Galeno. It said of course Title VII doesn't mean that. That would upset the federal state balance in a way that Congress never thought about and therefore never expressly made that choice in Title VII. And so there are big changes in this enforcement guidance and they matter. Can you address the notice and comment in meritor? I'm sorry, Your Honor? Can you address, as your opposing counsel talked about, the notice and comment in meritor, the sexual harassment notice and comment? The idea that it doesn't have to be substantive and they still might choose to do it and get testimony from people. Yes, Your Honor. I believe what my colleague was talking about is that EEOC, if it wants to, can choose to invite people in to to say what do you like about our procedures or not. Right. And if EEOC wants to issue some sort of non-binding view, so if it wants to issue a real policy statement where it's just kind of musing about its view of the law and it's clear to a reasonable employer that it's free to ignore that, that's a D.C. Circuit's test. If you can look at it and you would think, I don't need to worry about this. Guidance could be that. Right, right. And as this Court and the Supreme Court have said, the line is murky where it goes too far. There's no question here. When you say this is unlawful, this is directed towards employers, and in the same sentence that you say that it's directed towards employers, that it's also directed towards enforcement personnel, there's no question about what you're getting at. And then in footnote two, they take away all doubt. They say all entities under Title VII are subject to this analysis. Subject to means controlled by. There's no, they are being clear. They want employers to know that they better comply with I want to make sure that I finish my answer on causation with DOJ. The Supreme Court in Bennett said that you don't need to challenge the very last step. And the Supreme Court in Abbott said, the FDA made the same argument there where they said, yeah, we have this rule, but we can't do anything. It's the AG that goes and decides whether or not to bring an enforcement action. And the Court said that doesn't matter. This is not something where you're in an advisory capacity advising the AG. You are directing this towards regulated parties. We're not going to let the fact that there are two different agencies here make that difference. And indeed, in Hawks, even though standing did not expressly come up, it's hard to believe that the SG or the Supreme Court would have missed a lack of standing, but the EPA was the agency there that DOJ said would have sued the plaintiffs in Hawks had they discharged pollutants without a permit. But the plaintiffs sued the Corps of Engineers. There was no standing issue in that case either. So the fact that it has to go through DOJ does not matter for the regulatory burden that Texas faces. And it also doesn't matter because without DOJ, the interference with Texas's ability to enforce a legal code is still here. The EEOC is still threatening private employers with enforcement actions for following facially neutral state laws in the exact way the DOJ told the United States Supreme Court Title VII does not require. And adding insult to injury to that, Your Honor, DOJ in Galeno told the Supreme Court, the Second Circuit got this wrong. But don't take this issue. One of the reasons why you shouldn't take it is that the Second Circuit didn't say anything about it. It's a conclusory statement. There's no reasoning. And then what does EEOC do when it says that private employers must ignore facially neutral state law? It cites Galeno. The DOJ, on the one hand, is saying this case has no reasoning. The EEOC then goes and cites it in guidance as a basis to threaten private My colleague here talked about evidence. The only evidence, well, first of all, Texas has evidence that it has reviewed agency policies, which is enough to show that there's a pressure on the state. And as this Court has held, pressure is enough. And all this Court needs to do is compare the guidance to Texas's policies and laws to see that there is a forced choice placed upon Texas to change its policies or expose itself to enforcement. And this Court has said that a forced choice is enough to show standing. And all this Court needs to do is look at the guidance where it tells private employers that facially neutral state laws are no defense. Because this Court said in Texas v. United States that states have standing based on federal interference with the enforcement of state law. And one of the cases that it cited for that was State of Ohio XRL Celebrese v. United States Department of Transportation, in which the Sixth Circuit said that the document issued by DOT there necessarily endangers Ohio's enforcement of state law because it said that the Ohio statute is preemptive. The Ohio statute there governed private employers and the Department of Transportation said that's preempted. Do what we say. And the Sixth Circuit said there that that necessarily harms the state. And if we can return to the DOJ's argument in Galeno, the DOJ said that if the Court holding that state, that employers must ignore facially neutral state law, vitiates state authority over employers and would frustrate compliance with such state laws, and the resulting uncertainty could jeopardize the state's interest in enforcing its laws, that is an injury to the state of Texas's sovereign interest in its ability to enforce its legal code, and is an injury whether or not DOJ stays in this case. Counsel, would this guidance be entitled to skid more deference in a suit by a private employer? I imagine that that EEOC would argue that it is. At most, that's the deference it would be entitled to. Right, I think there's a strong argument that it's not. The only thing it does is it cites, it has more footnotes than its previous guidance, but it's not well, well-reasoned. As DOJ explained, it's very, very wrong, in fact. Would the musings that you were talking about, if you truly just wanted to get your thoughts out there without any, would that also be entitled to possibly skid more deference? I think it's possible, Your Honor. And that's, that's, that's not something that, that we're arguing by itself would trigger standing or, or review. Courts are – Looking, though, at the, Judge Higginbotham's opinion in the prior version and his dissent. Yes, Your Honor. And Judge, the, the primary error in Judge Higginbotham's dissent was, number one, confusing standing with the merits. He said it's not a final agency action, therefore you don't have standing. But also, his, his, his dissent ignored the practical binding effect of, of this rule. And, and, and for all those reasons, the, the, the, the majority opinion in the, in the first case was, was the correct one. I'd be, I'd be remiss if I didn't mention the other legal consequences that I want to make sure that I tell the Court about, because this case is very similar to Hawks. In, in Hawks, the Supreme Court looked at the negative jurisdictional determination that the Court had, and, and the Court said, this is not legally enforceable, or sorry, the positive jurisdictional determination. Nobody can sue based on the positive jurisdictional determination, but what it does is, it exposes the plaintiff to enforcement action by a different agency, the EPA. And the Court said, if it had come out differently, then you would have been protected from enforcement action. That last part is, is a legal consequence, so denying that benefit must also be a, a legal consequence. We have the same thing here. EEOC is binding its employees. If EEOC had, had come out here and it's, and, and stuck to its prior view that, that individualized assessments were not necessary, or stuck to DOJ's view that facially neutral state laws are a, a defense to, to disparate impact claims, it would have protected from enforcement wide swaths of employers, and it would have protected Texas from referrals to, to DOJ on, on individual claims of, of discrimination. But the guidance also creates safe harbors. It tells employers that if you, if you do individualized assessments, or you adopt a method that we've chosen for you, then you will consistently meet Title VII. The, the defendants here say that consistently meet doesn't guarantee, but adding an adverb doesn't change anything. If you sometimes meet and sometimes don't, it's not consistent. If you will consistently meet, they're telling employers, do this, and you don't have to worry about an enforcement action. And as the Supreme Court said in Hawks, providing a safe harbor is also a legal consequence. The Court has... Thank you, Your Honor. I have several points I'd like to respond to. I will start with standing, and I wanted to emphasize, as we noted in our brief, that the object of an action language comes from the Supreme Court's Lujan decision, and the context of that was actually to contrast where you have a question of third-party standing, where a plaintiff is coming in and saying, for example, if you, you had a doctor saying a regulation aimed at hospitals or HMOs is going to decrease my compensation as a doctor, but the right, the object of the regulation is a hospital, then it's harder to show standing. That was the context, but Lujan itself makes clear several times that this, there is no elimination of the requirement that a plaintiff has to show injury in fact, fairly traceable to the challenged action, and redressable by a court order. And in the summary judgment stage, a plaintiff can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts that establish this injury in fact, and here, Texas did not do that. But do you concede that it is the object that it was, I mean, your opposing counsel used some sort of language about going after backwoods or hayseed and all of that. Do you concede that it, that Texas is in fact the object and that this was directed to Texas? Uh, no, Your Honor, I do not. I think that the guidance clearly applies to employers under Title VII. It is not aimed at states generally, at any specific state. There is no evidence of that. Um, there, it, it is just, in fact. The Attorney General's comments are so they're not, or no, I guess they don't precede it. Um, the Attorney General's comments about it. The Attorney General back then. Yes. There, there, actually there are no comments about the guidance. About the guidance, but about the rule being that needed to, states needed to step up. Uh, that, that is just, that is not evidence of any official Department of Justice position on the guidance. Um, but regardless, it is, um, again, the guidance itself is just expressing a view of what the Commission's, um, views of Title VII are. And Texas keeps going back to this Galeno brief and that, they're, they're omitting a footnote in that brief that said, first of all, it's not relevant here anyway because it, it's, it wasn't an APA action. There's nothing to do with standing or final agency action. But the, the government in that brief also made clear that it wasn't addressing the state as employer. That's what this lawsuit is about. Texas is an employer. What it's, what it's complaining about is it, is that it has hiring policies that it alleges may be affected. Um, and that's, it is therefore acting in its capacity as an employer. I also wanted to go back to this Court's, um, decision in Texas v. U.S. which actually said, um, was very careful to restrict itself to the facts of that case. Um, it said the special solicitude that, that it applied in that case, but it wouldn't always necessarily be enough for a state to show that there was pressure to change its laws. And again, we don't think that here there would be pressure from the guidance anyway, but even apart from that, there was an economic injury in that case. This Court noted that Texas had shown in the record there millions of dollars of state loss in the state budget because of driver's licenses that it would have, if, if as a result of the DAPA program. You, you, you do acknowledge, I'm sure, that even without that decision from, from 2015, the Massachusetts v. EPA case does broadly recognize the concept of special solicitude to the states. Um, yes, Your Honor, but as both Massachusetts and the later Arizona Supreme Court case and this, this Court's, um, Texas case, um, all recognize that doesn't eliminate the, the state as the plaintiff here and as the plaintiff, it is required to show, um, injury in fact and, um, causation and redressability. And in fact, in Texas, um, there is a citation to a case where Mississippi was held not to, a previous Fifth Circuit case where Mississippi hadn't made that particular argument and was held not to have standing because it hadn't demonstrated on the record that there was any injury in fact. And we think that falls squarely within, um, uh, the, the holdings of Massachusetts and this Court's, uh, case. So the cost associated with the, uh, internal evaluation of their policies by that particular state agency is not a specific injury? Uh, no, Your Honor. There, there was just an, the only allegation was that the Department of Public Safety, um, looked at its policies at that time. There weren't any affidavits about any kind of ongoing costs, future costs, certainly, uh, nothing about the amount spent, nothing about whether the agencies generally, you know, look at their policies, um, and evaluate them in terms of Title VII compliance. Um, that is certainly not adequate. Um, and I, in, in that, and in fact, the example there of the, there was a state employee who brought a charge, um, but in that case, Texas had cited it the first time up, um, and it said in their complaint, the EEOC actually was unable to find reasonable, uh, um, a violation, a reason to believe the statute had been violated. So they really have not shown anything in the record that either the EEOC or in particular the Department of Justice that has enforcement authority and, um, I would ask the court to, to look back on Abbott Labs because there, when the Supreme Court made the statements that counsel was alluding to, it made clear that the regulation that affected labeling had the force of law. So that's a completely, all of these cases involve regulation that, that if there's going to be an enforcement action later, even if it would be an enforcement action by the Department of Justice, it could be for violating the regulation or the regulation would, as an interpretation of the statute, have the force of law, in other words, be entitled to Chevron deference. And there is, you know, nothing here that's at all comparable and Hawks also, um, doesn't apply because, um, the guidance does not, um, establish any safe harbors. It, uh, it has the conditional language that the commission believes and that shows the EEOC's recognition that it can't control what a court is going to do later. And in particular here, the, um, Department of Justice has authority to bring, um, a pattern and practice suit against the state or local government absent an EEOC referral. So even if the EEOC believes, um, and, and, and this court has construed that provision of Title VII as allowing the AG to bring an action for disparate impact. So that couldn't insulate Texas or any other state, even if it were, were phrased in the type of language required for a safe harbor. That causes, I, I'm confused a bit, um, perhaps I'm confused a bunch, but, um, it, it seems that because your two clients have different positions as to whether or not Title VII on its own allows for this, um, you know, you, this argument plays into, well, they could do it even if it's not there in the guidance. Well, the, that's not what the DOJ believes. The DOJ doesn't believe they can do it if it's not in the guidance because the DOJ doesn't believe it's consistent with the Title VII law. Well, certain, I mean, I, we should make clear that the guidance also has disparate impact, um, disparate treatment provisions that are not. We've, we've assumed all along that in your argument that they could do this anyway, the EEOC could, but the DOJ would not. Well, again. According to what you told us about the DOJ. Whether, right, I mean, we, this, but we aren't asking the court to examine the merits of the various positions about what Title VII means. I mean, that happens in a lot of different contexts with Title VII. But you, you admit that, well, if we were going to do the Declaratory Judgment Act, we might. You, you admit that your clients have two very different positions, don't they? Well, as we set forth in our brief, there are, um, with respect to the disparate impact provisions of the guidance, that the DOJ does disagree with the EEOC's view in a number of respects. How are you arguing both? It, it, how does, excuse me? If we're, if we're dealing today with the Declaratory Judgment Act also is one of the issues here. How are you arguing both, for both of them right now, simultaneously? We, we. That's a difficult role for a lawyer. Well, we actually, I mean, Texas has already, um, we actually agree that the entire case should be dismissed for lack of jurisdiction. So the Declaratory Judgment Action, whether we win or lose on, um, the standing and final agency action, we think it should be dismissed for, um, lack of jurisdiction. Texas has conceded that, um, if there, if the, um, if we don't win on the final, if, if the, if the District Court then it, it actually suggests that its Declaratory Judgment Action be, um, dismissed for lack of jurisdiction. Um, and I see my time is up. So. Yes. Thank you. Your time has expired. Your case is under submission. Okay. Thank you, Your Honor.